1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Steven J. German - State Bar No. 014789
**ADELMAN GERMAN, P.LC.**
8245 North 85th Way
Scottsdale, Arizona 85258
Telephone (480) 607-9166
Facsimile (480) 607-9031
Steve@AdelmanGerman.com

*Additional Attorneys for Plaintiff*
*Appear on Signature Line*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| STEPHEN CHRISTIAN, individually and on behalf of all others similarly situated, | Case No. |
| *Plaintiff,* | **CLASS ACTION** |
| v. | **DEMAND FOR JURY TRIAL** |
| PARADIGM SERVICES, INC. d/b/a ALLIED COMMERCIAL FINANCIAL, a Minnesota corporation, and BLAKE ZINKE, individually, | |
| *Defendants.* | |

Plaintiff Stephen Christian ("Christian") brings this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendant Paradigm Services, Inc. doing business as Allied Commercial Financial ("ACF") and Blake Zinke, ACF's Chief Operating Officer (collectively "Defendants"), to stop their practice of making unsolicited telemarketing calls to the cellular telephones of consumers nationwide and to obtain redress for all persons injured by its conduct. Plaintiff, for his Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorney.

**NATURE OF THE ACTION**

1.      Defendant ACF is a rapidly-growing payment processing company.

2.      Defendant Blake Zinke is the chief operating officer of ACF.

3.      Unfortunately for consumers, Defendants ACF and Blake Zinke cast their marketing net too wide. That is, in an attempt to promote ACF's business and generate leads for its merchant processing account, Defendants conducted (and continue to conduct) a wide-scale telemarketing campaign that features the making of repeated unsolicited phone calls to consumers' cellular telephones - including cellular telephones and numbers that appear on the National Do Not Call Registry - without consent, all in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA").

4.      By making the telephone calls at issue in this Complaint, Defendants caused Plaintiff and the members of the Classes actual harm and cognizable legal injury. This includes the aggravation and nuisance and invasions of privacy that result from the receipt of such calls, in addition to a loss of value realized for the monies consumers paid to their wireless carriers for the receipt of such calls. Furthermore, the calls intentionally interfered with Plaintiff and the other Class members use and enjoyment of their cellphones, including the related data, software, and hardware components.

5.      The TCPA was enacted to protect consumers from unsolicited and annoying telephone calls like those alleged in this case. In response to

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Defendants' unlawful conduct, Plaintiff files the instant lawsuit and seeks an injunction requiring Defendants to cease all unsolicited telephone calling activities to consumers as complained of herein and an award of statutory damages to the members of the Class under the TCPA, together with costs and reasonable attorneys' fees.

## **PARTIES**

6.     Plaintiff Stephen Christian is a natural person and citizen of the State of Arizona.

7.     Defendant Paradigm Services, Inc. does business as Allied Commercial Financial or ACF which is a company existing under the laws of the Minnesota with locations in St. Paul Minnesota and Mesa, Arizona. Defendant conducts business throughout this District, the State of Arizona, and the United States.

8.     Defendant Blake Zinke is an individual residing in Phoenix, Arizona and the chief operator officer of ACF.[1]

## **JURISDICTION AND VENUE**

9.     This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq., which is a federal statute.

10.     The Court has personal jurisdiction over Defendants ACF and Blake

---

[1] https://www.linkedin.com/in/bzinkemobisquadmarketlaunch

Zinke because they solicit significant consumer business in this District, have entered into business to business contracts in this District, and the unlawful conduct alleged in this Complaint occurred in, was directed to, and/or emanated from this District.

11.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendants solicit a significant amount of consumer business within this District and because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District. Venue is additionally proper because Plaintiff and Defendants are located in this District.

12.    On information and belief, Defendant Blake Zinke directly and personally participated in, directed and/or authorized, and ratified the conduct constituting the statutory violations alleged herein. On information and belief, Defendant Blake Zinke established and/or approved ACF's policies and practices, oversaw operations, and was directly involved in the business practices that violated the TCPA.

## COMMON FACTUAL ALLEGATIONS

13.    Defendant ACF is a merchant processing account company for small to medium sized businesses.

14.    Unfortunately for consumers, Defendants utilized (and continues to utilize) a sophisticated telephone dialing system to call cellular telephone users *en masse* for the purpose of promoting its services, often times calling

consumers on their cellular phones.

15. On information and belief, Defendant Blake Zinke personally controlled and maintained the dialing equipment 3CLogic that was used in the telemarketing campaign and oversaw and set the company's policies with respect to telemarketing in general.

16. In Defendants' overzealous attempts to market its services, Defendants placed (and continue to place) phone calls to consumers that never provided consent to be called and to consumers with whom they have had no prior dealings or relationship. Worse yet, Defendants placed (and continue to place) repeated and unwanted calls to consumers whose phone numbers are listed on the National Do Not Call Registry. Consumers place their cellphone numbers on the Do Not Call Registry for the express purpose of avoiding unwanted telemarketing calls like those alleged here.

17. Defendants seek to generate leads for its merchant processing accounts for small and medium sized businesses. However, Defendants have failed to appropriately segment ACF's call list between landline and cell phone numbers. As a result, Defendants have called cell phone numbers with ACF's auto-dialer equipment, which is expressly prohibited by the Telephone Consumer Protection Act (TCPA).

18. Defendants calls are advertisements. Specifically, Defendants pretend to call to inform the caller about the new EMV standard in new credit cards that could affect the called party's current credit card processing. However,

this 'open' is designed to catch the consumer's attention so that Defendants can then lead present their sales pitch.

19.     The FCC has specifically addressed such dual-purpose calls. The Commission has ruled that "if the call notwithstanding its free offer or other information, is intended to offer property, goods, or services for sale either during the call, or in the future, that call is an advertisement."[2]

20.     Defendants, or their agents acting on their behalf, use a variety of local phone numbers to make these unlawful sales calls to consumers.

21.     Not surprisingly, these practices have led to significant complaints from consumers, which can be found quickly on the Internet. For example, consumers have publicly complained that:

- This company often calls regarding saving you money on credit card fees...they never give specifics and want to come to your place of business to show you what they can do.  We have asked them not to call and they continue to call every couple of months.[3]

- A woman introduced herself as "ACF" and peppered me with intimidating, abusive and harassing language, insisting that I tell her about credit card use/non-use.  I hung up and surprisingly, within a matter of seconds, she  called back again, using the same intimidating, abusive, harassing language. She wanted to know whether or not my business uses credit cards because a "new law" is in effect affecting companies that accept credit cards. [4]

- Part of misleading company called "Allied Commercial Financing" that will try to call every couple days about money lending

---

[2] 2003 TCPA Order, 18 FCC Rcd at 14098, para. 142.
[3] http://800notes.com/Phone.aspx/1-619-359-8288
[4] http://800notes.com/Phone.aspx/1-619-359-8288

1
2
3
4
5
6
7
8
9

schemes and a new credit card law that you are supposedly non-compliant with that they are to help you with. Their angle is to catch the easily intimidated with a pushy open, rude defensiveness, and refusal to put your number on their "Do not call list."[5]

- Caller ID states the number as 619-359-8288. They have called 3 times this week, and every request to put us on their do-not-call list was refused. We are a business location. They have a call center and have "coaches" in the back ground over hearing the conversation and trying to keep you on the line. They are extremely aggressive. I would never ever do business with a workroom operation like this, clearly they are out to take advantage of people.[6]

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

22.    In making the phone calls at issue in this Complaint, Defendants and/or their agent utilized a contact center system that had the capacity to make automated calls. On October 21, 2014 3CLogic announced in a press release that Allied Commercial Financial selected 3CLogic as its leading cloud software platform, which includes a predictive dialer.[6] Defendant Zinke commented on choosing the 3CLogic dialer that "Our former vendor simply lacked the lead and call management features we require to be competitive and effective. It was simply too difficult to make it work the way you needed it to."[7] Defendant Zinke further stated that the 3CLogic contact center was a "breath of fresh air…[t]he solution is intuitive, the features on target, the architecture makes sense, and the support team is always ready and helpful."[8] Plaintiff has no reason to believe these statements are untrue.

26
27
28

---

[5] http://800notes.com/Phone.aspx/1-619-359-8288
[6] http://800notes.com/Phone.aspx/1-619-359-82888. *Id.*
[7] http://www.prweb.com/releases/2014/10/prweb12259689.htm
[8] *Id.*

23.     Specifically, the hardware and software used by Defendants (or their agent) has the capacity to store, produce, and dial random or sequential numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse*, in an automated fashion without human intervention. Defendants' automated dialing equipment includes features as a predictive dialer, inasmuch as it is capable of making numerous calls simultaneously (all without human intervention).

24.     Defendants knowingly made (and continue to make) telemarketing calls without the prior express consent of the call recipients and knowingly continues to call them after requests to stop. As such, Defendants not only invaded the personal privacy of Plaintiff and members of the putative Class, but also intentionally and repeatedly violated the TCPA.

## **FACTS SPECIFIC TO PLAINTIFF STEPHEN CHRISTIAN**

25.     On July 2, 2003 Plaintiff Christian registered his cellular phone number on the national do not call registry to avoid receiving unsolicited telemarketing calls on his cellular phone.

26.     On November 10, 2015, Plaintiff received a call on his cellular phone from the phone number 602-892-0647. When Plaintiff answered the call he heard a pause after he said hello and before an operator came onto the line. The live operator asked to speak to the owner of the company and proceeded to try and sell him a merchant processing account.

27.    On November 11, 2015 Plaintiff received two calls from 602-892-0653. Plaintiff answered the calls, and he heard a pause before being connected to a live operator.

28.    Plaintiff has received these same calls over the past year soliciting him for a credit card processing account. Plaintiff has no need for a payment processing account and has asked this caller to stop calling him.

29.    Plaintiff does not have a relationship with Defendants, has never provided his telephone number directly to Defendants, and has never requested that Defendants place calls to his or offer him ACF's services. Plaintiff does not have any business for which he uses his cellphone. Simply put, Plaintiff has never provided any form of prior express written consent to Defendants to place calls to him and has no business relationship with Defendants.

30.    Defendants at all times are and were aware that the above-described telephone calls were and are being made to consumers like Plaintiff who had not consented to receive them and whose telephone numbers were registered with the National Do Not Call Registry.

## **CLASS ALLEGATIONS**

31.    **Class Allegations**: Plaintiff Christian brings this action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3) on behalf of himself and the three classes defined as follows:

**Autodialed No Consent Class**: All persons in the United States who (1) Defendants (or a third person acting on behalf of Defendants) called; (2)

on the person's cellular telephone number; (3) for the purpose of selling Defendants' products and services; and (4) for whom Defendants claim it obtained prior express consent in the same manner as Defendants claim it obtained prior express consent to call the Plaintiff.

**Do Not Call Registry Class**: All persons in the United States who (1) Defendants (or a third person acting on behalf of Defendants) called more than one time on his/her cellphone; (2) within any 12-month period (3) where the cellphone number had been listed on the National Do Not Call Registry for at least thirty days; (4) for the purpose of selling Defendants products and services; and (5) for whom Defendants claim it obtained prior express consent in the same manner as Defendants claim it obtained prior express consent to call the Plaintiff.

The following people are excluded: any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or their parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons. Plaintiff anticipates the potential need to amend the Class Definitions following the completion of class discovery regarding the size and scope of the Classes.

32.    **Numerosity**: The exact sizes of the Classes are unknown and not

available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendants made telephone calls to thousands of consumers who fall into the definition of the Classes. Members of the Classes can be easily identified through Defendants' records.

33.    **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

      (a)    Whether Defendants' conduct violated the TCPA;

      (b)    Whether Defendants systematically made telephone calls to individuals who did not previously provide Defendants and/or its agents with their prior express consent to receive such phone calls;

      (c)    Whether Defendants made the calls with the use of an ATDS;

      (d)    Whether Defendants systematically made telephone calls to consumers whose telephone numbers were registered with the National Do Not Call Registry;

      (e)    Whether members of the Class are entitled to treble damages based on the willfulness of Defendants' conduct;

      (f)    Whether Defendant Zinke personally oversaw the making of the calls in this case or otherwise acted so as to be personally liable under the TCPA; and

      (g)    Whether Defendants systematically made telephone calls to consumers after they explicitly asked not to be called from Defendants.

34. **Typicality**: Plaintiff's claims are typical of the claims of the other members of the Classes. Plaintiff and the Classes sustained damages as a result of Defendants' uniform wrongful conduct during transactions with Plaintiff and the Classes.

35. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in complex class actions. Plaintiff has no interest antagonistic to those of the Classes, and Defendants has no defenses unique to Plaintiff.

36. **Policies Generally Applicable to the Classes**: This class action is appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Classes as respective wholes, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members, and making final injunctive relief appropriate with respect to the Classes as respective wholes. Defendants' practices challenged herein apply to and affect the Class members uniformly, and Plaintiff's challenge of those practices hinges on Defendants' conduct with respect to the Classes as respective wholes, not on facts or law applicable only to Plaintiff.

37. **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy given that joinder of all parties is

impracticable. The damages suffered by the individual members of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual members of the Classes to obtain effective relief from Defendants' misconduct. Even if members of the Classes could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

### FIRST CAUSE OF ACTION
**Violation of 47 U.S.C. § 227**
**(On behalf of Plaintiff and the Autodialed No Consent Class)**

38.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

39.    Defendants made unsolicited and unwanted telemarketing calls to telephone numbers belonging to Plaintiff and the other members of the Class—without their prior express written consent—in an effort to sell its products and services.

40.     Defendants made the telephone calls using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*.

41.     Defendants utilized equipment that made the telephone calls to Plaintiff and other members of the Class simultaneously and without human intervention.

42.     By making unsolicited telephone calls to Plaintiff and members of the Class's cellular telephones without prior express consent, and by utilizing an ATDS, Defendants violated 47 U.S.C. § 227(b)(1)(A)(iii).

43.     As a result of Defendants' unlawful conduct, Plaintiff and the members of the Class suffered actual damages in the form of monies paid to receive the unsolicited telephone calls on their cellular phones and, under Section 227(b)(3)(B), are each entitled to, *inter alia*, a minimum of $500 in damages for each such violation of the TCPA.

44.     Should the Court determine that Defendants' conduct was willful and knowing, the Court may, pursuant to Section 227(b)(3), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Class.

## SECOND CAUSE OF ACTION
### Violation of 47 U.S.C. § 227
### (On behalf of Plaintiff and the Autodialed Do Not Call Class)

45.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

46.     Defendants made unsolicited and unwanted telemarketing calls to telephone numbers belonging to Plaintiff and the other members of the Class on their cellular telephone in an effort to sell its products and services *after* the person informed Defendants that s/he no longer wished to receive calls from Defendants.

47.     Defendants made the telephone calls using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*.

48.     Defendants utilized equipment that made the telephone calls to Plaintiff and other members of the Class simultaneously and without human intervention.

49.     By making unsolicited telephone calls to Plaintiff and members of the Class's cellular telephones after they requested to no longer receive calls, Defendants' violated 47 U.S.C. § 227(b)(1)(A)(iii) by continuing to call them without prior express consent.

50.     As a result of Defendants' unlawful conduct, Plaintiff and the members of the Class suffered actual damages in the form of monies paid to

receive the unsolicited telephone calls on their cellular phones and, under Section 227(b)(3)(B), are each entitled to, *inter alia*, a minimum of $500 in damages for each such violation of the TCPA.

51.    Should the Court determine that Defendants' conduct was willful and knowing, the Court may, pursuant to Section 227(b)(3), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Class.

## THIRD CAUSE OF ACTION
### Violation of 47 U.S.C. § 227 *et seq.*
### (On behalf of Plaintiff and Do Not Call Registry Class)

52.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

53.    47 U.S.C. § 227(c) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

54.    The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

55.    47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are

applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,'" which the Report and Order, in turn, provides as follows:

> The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers.

56.     47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1)    Written policy. Persons or entitles making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

> (2)    Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

> (3)    Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request

and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request . . . .

(4)     Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5)     Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6)     Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

57.     Defendants violated § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to wireless telephone subscribers such as Plaintiff and the Do Not Call Registry class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government. These consumers requested to not receive calls from

1

Defendants, as set forth in § 64.1200(d)(3).

2

58.     Defendants also violated § 64.1200(d) by failing to have a written

3
4

policy of dealing with do not call requests, by failing to inform or train its

5

personnel regarding any do not call list, and by failing to record and honor do not

6

call requests.

7
8

59.     Defendants made more than one unsolicited telephone call to

9

Plaintiff and members of the Do Not Call Registry class within a 12-month period

10

without their prior express consent to receive such calls. Plaintiff and members of

11

the Do Not Call Registry class never provided any form of consent to receive

12
13

telephone calls from Defendants, and/or Defendants do not have a current record

14

of consent to place telemarketing calls to them.

15

60.     Defendants violated § 64.1200(d) by initiating calls for telemarketing

16
17

purposes to residential and wireless telephone subscribers, such as Plaintiff and

18

the Do Not Call Registry class, without instituting procedures that comply with the

19

regulatory minimum standards for maintaining a list of persons who request not

20

to receive telemarketing calls from them.

21
22

61.     Defendants violated 47 U.S.C. § 227(c)(5) because Plaintiff and the

23

Do Not Call Registry class received more than one telephone call in a 12-month

24

period made by or on behalf of Defendants in violation of 47 C.F.R. § 64.1200, as

25

described above. As a result of Defendants' conduct as alleged herein, Plaintiff

26

and the Do Not Call Registry class suffered actual damages and, under section

27

47 U.S.C. § 227(c), are each entitled, *inter alia*, to receive up to $500 in damages

28

for such violations of § 64.1200.

62.    To the extent Defendants' misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Stephen Christian, individually and on behalf of the Classes, prays for the following relief:

1.    An order certifying the Classes as defined above, appointing Plaintiff Stephen Christian as the representative of the Classes and appointing his counsel as Class Counsel;

2.    An award of actual and statutory damages;

3.    An injunction requiring Defendants and their agents to cease all unsolicited telephone calling activities, to honor do not call requests, and to provide a domestic number for opting out, and otherwise protecting the interests of the Classes;

4.    A declaratory judgment declaring that Defendants' calls violated the TCPA, that Defendants' equipment constitutes an automatic telephone dialing system under the TCPA, and that Defendants failed to obtain prior express written consent to call Plaintiff;

5.    An award of reasonable attorneys' fees and costs; and

6.     Such other and further relief that the Court deems reasonable and just.

## **TRIAL BY JURY**

Pursuant to Federal Rules of Civil Procedure 38(b) Plaintiff has demanded a trial by jury.

Dated this 12th day of February 2016.

**ADELMAN GERMAN, P.L.C.**

By: /s/ *Steven J. German*
Steven J. German
8245 North 85th Way
Scottsdale, Arizona 85258

**WOODROW & PELUSO**

*Steven Woodrow
*Woodrow & Peluso
3900 E. Mexico Avenue, Suite 300
Denver, CO 80210
Phone: (720) 213-0675
Email: swoodrow@woodrowpeluso.com

**LAW OFFICES OF STEFAN COLEMAN, LLC**

*Stefan Coleman
201 S. Biscayne Blvd, 28th Floor
Miami, FL 33131
Phone: (877) 333-9427
Law@Stefancoleman.com

*Motion for admission *pro hac vice pending*

*Attorneys for Plaintiff Stephen Christian, on his own behalf, and behalf of all others similarly situated*